IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW C. NEEVEL,

                Petitioner,                OPINION AND ORDER

  v.

                                              15-cv-588-wmc

TROY HERNS,[1]

                Respondent.

---

Petitioner Andrew C. Neevel seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds that the State court: (1) excluded certain evidence of the victim's violent character in violation of his right to present a defense; and (2) refused to instruct the jury on Wisconsin's defense of others privilege in violation of his right to a jury trial and to present a defense. (Dkt. #1.) Because the state court properly exercised its discretion with respect to both of these rulings, the court will deny Neevel's petition for a writ of habeas corpus.

BACKGROUND

**A. State Trial Court Proceedings**

On July 21, 2010, the State of Wisconsin charged Andrew Neevel in Iowa County Circuit Court with first-degree intentional homicide stemming from the shooting death of Jeffrey McPhail. At trial, Neevel argued that he shot McPhail in self-defense when McPhail came to his home and confronted him in his doorway.

---

[1] Pursuant to Federal Rule of Civil Procedure 25, the court has substituted the current superintendent of the Oregon Correctional Center, since that is where petitioner is currently incarcerated.

Before trial, Neevel asked the court to admit evidence of the victim's violent character to demonstrate the reasonableness of Neevel's fear of McPhail, as well as to paint McPhail as the aggressor. Recognizing this evidence may be relevant where the defendant adequately raises an issue of self-defense, *McMorris v. State*, 58 Wis. 2d 144, 149, 205 N.W.2d 559 (1973), the court agreed to admit evidence of: (1) instances in which McPhail threatened Neevel with physical violence; (2) McPhail's attempts to start bar fights; (3) a bar fight McPhail sparked by pushing his spouse off a bar stool; and (4) McPhail's own admission to Neevel that he was a violent man. However, the court refused to admit evidence about acts of domestic violence committed by McPhail against his spouse. The court provided three bases for excluding this evidence. First, this evidence was unlikely to contribute to the reasonableness of Neevel's fear of McPhail, because "spousal abuse isn't the kind of information that would cause somebody, another male, to think that they would be in danger such that they would have to get a gun." (*See* Motion Hearing Tr. (dkt. #23-10) at 44:10–13.) Second, the evidence would be "highly prejudicial" and provided only a "small amount of probative value." (*Id.* at 44:14, 45:2.) Third, the evidence may confuse the issues for the jury by creating "trials within trials concerning what's basically unrelated abuse." (*Id.* at 45:10–11.)

At trial, Neevel testified that he shot McPhail out of concern for his own safety: "I heard a noise, and then I heard Jeff McPhail scream, 'I'm going to fuck up your whole world.' . . . Jeffrey McPhail was coming towards me. He was -- he was right there. . . . And at that point in time I squeezed the trigger of the rifle and shot Jeffrey McPhail." (Trial Tr. (dkt. #23-12) at 94:5–15.) Neevel further testified that he shot McPhail because his two

daughters, who were inside Neevel's house during the confrontation, would be left defenseless if McPhail incapacitated him; "I'm not going to be able to fight. And then who is going to protect my daughters?" (*Id.* at 96–97:25–3.) Neevel also believed his older daughter would have gotten involved in the altercation if he had retreated back into the house.

Although Neevel estimated his daughters were about four feet behind him when he shot McPhail, Neevel did not testify that McPhail at any point specifically threatened or moved towards his daughters. (*Id.* at 94:3.) In fact, Neevel's testimony indicates he alone was the target of McPhail's aggression, not his daughters, "[a]nd Jeffrey McPhail was coming towards *me*." (Trial Tr. (dkt. #23-12) at 94:9–10) (emphasis added). His older daughter testified that she was holding her younger sister and observing her father's exchange with McPhail from inside the house; she did not testify that McPhail threatened her or made any movant in her direction. (*See id.* at 39 – 64.)

At the close of trial, the court instructed the jury on both perfect and imperfect self-defense. In Wisconsin, perfect self-defense requires a *reasonable* belief that self-defense was necessary to terminate unlawful interference, whereas imperfect self-defense requires only a *subjective* belief that self-defense was necessary. Perfect self-defense is a complete defense to a homicide charge, while imperfect self-defense mitigates first-degree intentional homicide to second-degree intentional homicide. *See* Wis. Stat. § 939.48 (2015-16).

Although Neevel asked his counsel about a potential jury instruction regarding defense of others, his counsel explained his view in open court that the evidence was not "enough to raise a question on the [defense of others] jury instruction" because the

instruction is pertinent when "a third person's being attacked." (Trial Tr. (dkt #23-13) 84:3–5.) The court agreed: "I know Mr. Neevel testified he was concerned for his daughter -- or daughters. I don't think there is any evidence that Mr. McPhail had any intent on harming either of them." (*Id.* at 84:6–9.) Accordingly, no jury instruction on defense of others was submitted to the jury.

The jury returned a guilty verdict on the lesser included offense of second-degree reckless homicide. The court later sentenced Neevel to ten years imprisonment and ten years of extended supervision.

### B. Wisconsin Court of Appeals

On appeal to the Wisconsin Court of Appeals, Neevel argued, among other things, that he was denied a fair trial because the court excluded evidence of McPhail's history of domestic violence and did not instruct the jury on defense of others. That court also ruled against Neevel. *State v. Neevel*, 2014 WI App 63, 354 Wis. 2d 323, 847 N.W.2d 425.

As to the exclusion of *McMorris* evidence on domestic violence, the appellate court ruled that the circuit court properly exercised its discretion to exclude the domestic violence evidence due to its potential to unfairly prejudice and confuse the jury. *Id.* ¶ 6. Given the breadth of admitted evidence of the victim's violent history, the court held that exclusion of evidence of an additional incident of domestic violence did not deny Neevel's ability to present a defense. *Id.* ¶ 7. Additionally, the court further held that any arguable error in excluding this evidence was harmless because the domestic violence evidence would not have supported a jury finding of perfect (or objectively reasonable) self-defense, something Neevel would have needed to overcome the second-degree reckless homicide charge for

4

which he was ultimately convicted. *Id.* ¶ 8. *See* Wis. Stat. § 939.48(1); Wis. Stat. § 940.01(2)(b).

Neevel's defense of others argument fared no better. The Court of Appeals agreed with the state circuit court that no evidence presented at trial supported the defendant's later claimed concern that McPhail intended to attack his children. Absent some evidence to support an objectively reasonable belief in the need to protect his children, the court found Neevel's *subjective* fear for his children's safety could only amount to an imperfect self-defense, which would have no impact on his second-degree reckless homicide conviction. *See* Wis. Stat. § 939.48(1); Wis. Stat. § 940.01(2)(b).

### C. Petition for Review to the Wisconsin Supreme Court

Following the Court of Appeals decision, Neevel petitioned the Wisconsin Supreme Court for review. In his issues presented, Neevel requested review of the exclusion of evidence "under *McMorris*," and argued in the petition that the exclusion of evidence of the victim's history of domestic violence violated his right to present a defendant. (Pet. for Rev. (dkt. #23-7) at 2.) As for the defense of others instruction, Neevel framed the issue as whether "a jury instruction on defense of others [was] warranted" given the fact that his daughters were just feet behind him. *Id.* The Supreme Court denied the petition. *State v. Neevel*, 2014 WI 122, 358 Wis. 2d 603, 855 N.W.2d 695.

OPINION

## I. Applicable Standard of Review

At the outset, petitioner challenges the applicability of the standard of review

5

established by the Antiterrorism and Effective Death Penalty Act ("AEDPA") to this case. Generally, before granting a writ of habeas corpus to an individual incarcerated by a state, this court must find the state conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *See* 28 U.S.C. § 2254(d)(1) (2012). Neevel asserts this stringent standard does not apply, and the court should review his conviction *de novo*, since the state courts never addressed the merits of his constitutional claims. More specifically, Neevel argues the Wisconsin Court of Appeals failed to consider the arbitrariness of the exclusion of evidence of the victim's history of domestic violence under *McMorris*, since it did not explicitly address the court's comments about spousal abuse. The court disagrees.

As the State points out, if anything, the Wisconsin Court of Appeals did the opposite. By finding that the two other factors the state circuit court relied upon to exclude the evidence -- likely prejudice and possibility of confusion -- sufficed to uphold the exclusion, the court of appeals explicitly concluded they did not have to consider the arguable relevance of this evidence further. *Neevel*, 2014 WI App ¶ 6. Additionally, the court of appeals expressly addressed Neevel's defense of others "on the merits" in finding that exclusion of the instruction constituted harmless error. *See Jensen v. Clements*, 800 F.3d 892, 900 (7th Cir. 2015) ("That a state court holding of harmless error beyond a reasonable doubt constitutes the adjudication of a claim on the merits for AEDPA purposes makes sense. . . . A harmless error determination is a substantive determination, not merely one of form."). Because the Wisconsin Court of Appeals reviewed both of Neevel's claims on the merits, this court must apply the deferential AEDPA standard.

6

## II. Fair Presentment

Before addressing Neevel's petition, the State raises its own threshold issue, arguing Neevel's defense-of-others argument is procedurally defaulted because it was not fairly presented to the state appellate courts. In determining whether a habeas petitioner fairly presented a federal claim to state courts, the court considers four factors: (1) whether the petitioner relied on federal cases engaging in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim such that it calls to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts within the mainstream of constitutional litigation. *See Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).

Whether Neevel fairly presented his constitutional claims is a close call. The State argues that his failure to explicitly raise the right to present a defense in either his brief to the Wisconsin Court of Appeals or his petition for review to the Wisconsin Supreme Court forecloses that argument in federal court. As an initial matter, Neevel's claim -- that the state circuit court erred in not giving a defense of others instruction -- has been presented at all levels of the Wisconsin courts. Moreover, federal courts must avoid "hypertechnicality" in deciding whether habeas petitioners adequately raised their constitutional claims in the state courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). "Mere variations in the same claim rather than a different legal theory will not preclude exhaustion." *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980).

Even so, the procedural posture of this case is similar to that in *Picard v. Connor*, 404 U.S. 270 (1971). There, the petitioner argued in state courts that his Fifth Amendment

7

right to a grand jury indictment and Fourteenth Amendment right to due process were violated. Only when the case reached the United States Supreme Court, did he assert that his right to equal protection under the Fourteenth Amendment was violated. As a result, the Supreme Court ruled his equal protection argument was not fairly presented, and it was thus procedurally defaulted. *Picard*, 404 U.S. at 278.

Similarly, Neevel argued in state court his "right to a fair trial" had been violated by the circuit court's failure to instruct the jury on the defense of others, but now couches the state circuit court's alleged failure as a violation of his right to present a defense.[2] Unfortunately, general appeals to broad constitutional principles, like the ones Neevel cites, are generally insufficient to present the substance of the claim to a state court. *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *Verdin*, 972 F.2d at 1475 (noting with approval a First Circuit case holding the bare allegation that a defendant was not given a fair trial did not alert the state courts of a federal constitutional claim).

Here, Neevel did not specifically cite any federal constitutional provision in either his brief to the Wisconsin Court of Appeals or petition for review to the Wisconsin Supreme Court. Instead, Neevel is left to argue that his citation to *State v. Head*, 255 Wis. 2d 194, 648 N.W.2d 413 (2002), in his petition for review results in fair presentment as it satisfies the "state court case" *Anderson* factor. But Neevel's argument in the petition for

---

[2] In fairness, Neevel's brief to the Wisconsin Court of Appeals includes a passing reference to a violation of his "right to put on a defense." (Pet'r's Ct. App. Br. (dkt. #23-3) at 14.) However, this was part and parcel of his argument that he was denied a fair trial. (Pet.'s Ct. App. Reply Br. (dkt. #23-5) at 5 ("The exclusion of *McMorris* evidence denied Andrew's constitutional right to put on a defense, *and therefore* deprived him of a fair trial.") (emphasis added).) For purposes of the State's fair presentment argument, the record is at best unclear as to precisely which constitutional rights Neevel argued were violated in state court.

review is devoid of any constitutional analysis; indeed, he cited *Head* for the proposition that the state circuit court's decision not to give an instruction was "in conflict with controlling precedent." (Pet. for Rev. (dkt. #23-7) at 6.) As a result, Neevel's citation to *Head* does not even reference any federal constitutional analysis. *See Verdin*, 972 F.2d at 1476 (the petitioner has the burden to demonstrate the "clonal relationship" of federal and state claims in order to satisfy the fair presentment standard).

Given Neevel's vague references to general constitutional principles in his state court filings, compounded by the absence of any federal constitutional analysis, the court agrees that he has failed to satisfy the fair presentment standard under *Anderson* with respect to his defense of others claim.[3]

**III. Merits Review**

**A. Exclusion of *McMorris* Evidence**

Neevel's claim that the exclusion of domestic violence evidence consistent with the Wisconsin Supreme Court's decision in *McMorris* runs afoul of federal law fails on the merits. Certainly, criminal defendants have a right to present a defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, the right is not absolute. *Taylor v. Illinois*, 404 U.S. 400, 410–411 (1988); *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000). In particular, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R.

---

[3] Even if the court accepted Neevel's vague references to his right to put on a defense in constitutional terms, however, his claim fails on the merits, for reasons explained below.

Evid. 403; Wis. Stat. § 904.03.

With that standard in mind, the state court's decision to exclude the victim's history of domestic violence in the context of his principal claims of self-defense and lack of evidence that McPhail threatened anyone else was not an unconstitutional application of *McMorris*. To the contrary, the state circuit court provided three justifications for refusing to admit the domestic violence *McMorris* evidence. First, the court questioned whether McPhail's history of spousal abuse could reasonably shed light on Neevel's belief that he was in danger. (Motion Hearing Tr. (dkt #23-10) at 44:9–13.) In his habeas petition, Neevel argues that this was an unreasonable determination, but fails to grapple with the remaining, two justifications for the court's decision: the domestic violence evidence would prove "highly prejudicial," even assuming it had "limited probative value," and the evidence could confuse the jury. (*Id.* at 44:14–15; *id.* at 45:10–11.) While Neevel argues that the state circuit court's decision runs counter to the Wisconsin Supreme Court's decision in *Head*, that case confirmed that "admission of *McMorris* evidence is not automatic." *Head* 255 Wis. 2d at 253. Indeed, the *Head* court explicitly noted that admission of *McMorris* evidence is still subject to the limitations of Wis. Stat. § 904.03, leaving its admission to "the exercise of sound and reasonable discretion by the state circuit court." *Id.* Accordingly, the state circuit court's reasonable exercise of discretion not to admit the domestic violence *McMorris* evidence due its prejudicial nature and limited probative value, along with its potential to confuse the jury, does not run afoul of either state or federal rules of evidence, much less his federal constitutional right to present a defense.

## B. Defense-of-Others Jury Instruction

Likewise, the state circuit court's refusal to instruct the jury on a defense of others does not violate federal law. As previously touched on, a defendant's use of deadly force under Wisconsin law is privileged if the defendant had an objectively reasonable belief in the need to protect a third person from the threat of imminent death or great bodily harm. Wis. Stat. § 939.48(4). A defendant's subjective belief in the need to protect a third person from the threat of imminent death or great bodily harm mitigates a first-degree intentional homicide offense to second-degree intentional homicide. Wis. Stat. 940.01(2)(b). Among other requirements for the court to give a defense of others instruction, the defendant's theory must be "supported by the evidence." *United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir. 1994).

The Wisconsin courts had good grounds to find a defense of others theory was not supported by the evidence at trial. Most tellingly, both the state circuit court and Neevel's trial counsel agreed on this point. The court stated: "I don't think there is any evidence that Mr. McPhail had any intent on harming either of [Neevel's children]." (Trial Tr. (dkt. #23-13) at 84:8–9.) Neevel's trial counsel agreed, noting there was no evidence that McPhail was "attacking them." (*Id.* at 84:10.) Even now, Neevel has still not identified *any* evidence offered at trial that indicated an objective danger to his children, as opposed to his own subjective belief McPhail posed a threat to them. Without objective evidence, Neevel's belief in the threat towards his children was unreasonable as a matter of law, and the state circuit court's decision not to instruct the jury on an imperfect defense of others under the circumstances was at least arguably reasonable.

11

Even if the failure to provide a jury instruction as to an imperfect defense of others was constitutional error, it was rendered harmless by the jury accepting Neevel's imperfect self-defense claim. Having convicted Neevel of second-degree reckless homicide, a finding of imperfect defense of others would have led the jury to exactly the same result. *See* Wis. Stat. §§ 939.48(4); 940.01(2)(b). Nevertheless, Neevel insists that the state circuit court's failure to provide a defense of others instruction amounted to a substantial and injurious denial of his right to trial by jury. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). Since Neevel received the benefit of imperfect self-defense, however, the record simply does not support that conclusion.

Indeed, Neevel's trial testimony primarily concerned his perceived need to defend himself. The jury received an instruction on perfect self-defense and imperfect self-defense, and in convicting him of second-degree reckless homicide, the jury rejected Neevel's argument that he had an objectively reasonable basis to protect himself. As Neevel cites no evidence in the record suggesting that a perfect defense existed either as to himself *or* others, allowing perfect and imperfect self-defense instructions without comparable defense-of-others instructions did not amount to a denial of petitioner's right to a jury trial or denial of a defense, especially given the trial's focus on Neevel's claim of self-defense. Regardless, it was harmless.

**IV. Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a certificate of appealability, the petitioner must make a "substantial showing of the

12

denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)(internal quotations and citations omitted). Here, the petitioner has failed to make a substantial showing of the denial of a constitutional right, and thus, the court will deny a certificate of appealability in this case.

ORDER

IT IS ORDERED that:

1) Andrew C. Neevel's petition for writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2) No certificate of appealability will issue.

Entered this 7th day of December, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge